First case this morning, two consolidated cases, 410-250, 410-251, Busey Bank v. Arbour Walk Village. For the appellant is Maurice Berry. You are here, sir. For the appellant is Joseph Chamley. You are here? Yes, sir. Okay. Mr. Berry, you may proceed. Counsel. Counsel. I want to first of all thank you for consolidating these cases. It would be difficult to argue within the context of the suit on the note without arguing also the foreclosure of the mortgage. So it appears. The history here is that the defendant, Arbour Walk, following failure to make payments... Keep your voice up, please. I apologize. There was a confession of judgment taken by Busey Bank against Arbour Walk, David Sessions, on November 19, 2008. At that time, there was also issued a citation against Arbour Walk and David Sogrino. That was a suit on the note and on the note only. Procedurally, as we progressed, in that case, there was a motion to vacate filed by Arbour Walk six days after the confession was taken. That motion to vacate was attempting to allow review and allow the defenses that Arbour Walk and David Sogrino would be able to establish to be heard. Raise that voice a little more. It won't scare us. I apologize. What occurred after that in the suit on the note without a foreclosure on the mortgage being filed and within the rights under the commercial note, I'm not objecting to that, you see within the context of the L case sought possession as mortgagee in possession. That was on January 14, 2009. The motion to vacate, the actual judgment had already been filed. Following the granting of the possession to Busey Bank and then a correction order which identified the parameters under which they would be placed as mortgagee in possession, the defendants, Arbour Walk and David Sogrino, filed a motion to vacate that particular judgment. Now, it is and has been consistent with Arbour Walk's position that the judgment by confession on November 19 and the order of possession, which was granted by the court, was still not a final and appealable order. And I've briefed that issue. The primary reason that we don't believe that was a final appealable order was there were a number of issues remaining, especially the issue of attorney fees, which were reserved. That being the case, we proceeded on the hearing on the motion to vacate. I argued that motion. The only argument that took place in the court before Judge Paul at that time was the motion to vacate the possession issue, not the issue of the motion to vacate the judgment. When we continued to proceed on the L case, the suit on the note, Busey now had possession of the premises as mortgagee in possession. Some months later, Busey decided to file a foreclosure on the mortgage. Possession was not sought there because possession had already been obtained through the suit on the note. When the Chancery case had been filed, that was for the foreclosure on the mortgage. In response to that, in a timely manner, Arbour Walk filed a counterclaim based upon defensives to the note, based upon information that we had received, primarily running along consistent with the case that was ruled upon in the 5th District, about a bank on a commercial note calculating their interest based upon $360,000. It doesn't sound like a lot, but this note was in excess of $6 million. It essentially would have the effect of raising the interest rate from about $5.25 to about $5.34, I believe was our calculation. That being the defense, we raised that in a counterclaim. We raised that in a counterclaim because the foreclosure not only was seeking title to the property, but it was seeking possession of the property. It was also requesting a deficiency. It was also requesting judgment in a financial matter. So we're still there on the note, which had been obtained by confession of judgment on November 19, 2008, in the law case. The court took it under advisement, and at that point, that's when it was determined and Judge Hill ordered that the counterclaim should be dismissed under 2619. Based upon res judicata. Res judicata, the basis for that was that the note and the issues on the note, which was the basis of the counterclaim, attacking the interest rate charged by B.C. Bank, had already been determined in the L case. Is that right or wrong? That's incorrect. Res judicata is a sledgehammer. I mean, it's not something to be taken lightly. It addresses, bars all issues which were raised or could have been raised in the prior litigation, does it not? It does. Was this an issue which couldn't have been raised in the prior litigation? It was taken by confession, first of all. You could have filed a motion to vacate the confession on this ground if that was appropriate. We did. We did file a motion to vacate. But not on this ground. Not on that ground. It wasn't known to us at that time. It wasn't known to you what the documents you signed were? Well, it's went unnoticed for some four years. Well, unnoticed is rather different than you didn't have reason to know about it. It wasn't concealed. If it went unnoticed, then what would be left of the doctrine of res judicata? Gee, Judge, you didn't notice I had another claim, so I guess it doesn't apply. Well, that's an excellent argument. However, the determination and the effect of the rulings going on in the 5th District, Bank of Edwardsville, hadn't been explained. Counsel, tell me about why it doesn't apply here. I mean, we're not bound by the 5th District even if we agree with them. I agree. I agree. So, how is it that a claim that went unnoticed isn't barred by res judicata? There was no precedent, no legal argument, and no standing to even raise that issue as a defense. There hadn't been a court up to that point. The 365-360 was attacked once in a case that I've read from 1980-something. It wound up being resolved on a different ground. But the information that came available between the November and the time of the counterclaim was that there was precedent now for a standing that the 365-360 was indeed against the Illinois Interest Act, could be determined to be against the Consumer Fraud and Deceptive Business Practices Act, and was improper conduct by a bank. I think before that point, had we made that argument, there was no precedent. I mean, there was no legal base. There was a calculation. We could have raised it, but we had no reason to believe that that was, at that time, a good-faith argument. Because there was no precedent. When it had been attacked, and when it had been printed, and when it was public information, the counterclaim was filed using that theory under the violation of the Illinois Interest Act, the Consumer Fraud and Deceptive Business Practices Act, and Deceptive Trade Practices Act. What occurred after that, the court ruled that- Let me ask you, please, if you had it in there or I didn't see it, did you cite any case in support of your claim that the interest rate violated the interest tax? I cited the statute. I did not cite a case. I cited the Illinois Interest Act, but that was the extent. Procedurally, what occurred after that, when the court dismissed the counterclaim, based upon the determination that the motion to vacate had already been ruled on in the Elk case, we tried to make the argument that the motion to vacate, the confession of judgment, had never been argued. The determination by Judge Hill was that Judge Prowl had ruled on it, denied the motion to vacate, and it was done. She concluded that all subsequent hearings within the context of the note were supplementary proceedings. To this day, there still has not been a determination on the attorney fees issue in the Elk case. There's a judgment, but the attorney fees issue has been yet unresolved. So at that time, when we had that court's ruling at that point, we filed a 214-01 motion. We complied with the requirements. We set forth the due diligence because we filed that literally within days of her ruling that the motion to vacate had been denied. So the knowledge to us was immediate. We filed the 214-01 motions clearly within the two years. It was more than 30 days, but less than two years. We cited the due diligence. The due diligence, after that, we also cited the meritorious argument and meritorious defense, that being the context of the counterclaim that we had filed. Even if that's the case, a court cannot apply res judicata when there is continuing action based upon the same issue. This is a very unique matter. Generally, there's a foreclosure on the mortgage, and there may or may not be a suit on the note. In the mortgage foreclosure is when, under Chapter 15, the bank, the mortgagee, asks for possession of the premises. Everything was switched in this case. There was a confession judgment on the note itself, and asking for mortgaging and possession within the L case. I'm not disputing that a commercial note can include that, and the commercial note and mortgage that Busey had does allow them to pursue possession. But when the bank then files the foreclosure action to seek clear title, there is a money judgment obtained in the foreclosure action. So we're still working on the note. When Busey filed the foreclosure action, they waived the defense of res judicata because there is a money judgment in the foreclosure. There's a deficiency obtained, as the property has now sold, and that's being pursued through the foreclosure action. So you can't use it as a shield and a sword at the same time. I'm talking about res judicata. If res judicata was the sole basis for the dismissal of the counterclaim in the foreclosure case, which it was, you can't continue as a bank or a mortgagee to pursue the deficiency, the monetary judgment, or anything within the context of the foreclosure case. That's not even contemplated under Chapter 50. And to do so, at a minimum, would waive the defense of res judicata. We're asking that the trial court's dismissal under 2619 of the counterclaim filed in the foreclosure action be reversed. We're asking that that be reversed and that the counterclaim be allowed to proceed within the context of the foreclosure action. There is still collection pursued within the context of the foreclosure case. There is no financial issue with regard to a mortgage. We can all agree to that. The note is what gives rise to a financial obligation. The note is what gives rise to a deficiency, and the note identifies the amount that was to be paid. It's secured by the mortgage. It's not the actual monetary obligation. When Busey decided to file the foreclosure, well after they had obtained the judgment on the note and been placed in possession, they essentially waived any right to res judicata. They're bringing the note up themselves. If they weren't bringing up the note themselves, then they can't obtain the financial judgment, which was included in the foreclosure judgment. So based upon those issues, I think the trial court, I think Judge Hill believed that what she was doing was correct when she identified and thought the motion to vacate had been denied and that it was a final judgment. Her belief, however, is incorrect for the two reasons. First of all, we still don't believe that there's a final appealable judgment in the L case for which the res judicata would apply. And in a mortgage foreclosure, and I wish I could have found a case that had been procedurally close to this, but I never saw a situation where a bank sued on the note, took a confession of judgment, obtained possession, and then a number of months later filed a foreclosure suit to get title. There's nothing that says they can't do it. I couldn't find a case that says they can't, but by doing that and by pursuing the deficiency in the monetary amount in the foreclosure case as our defense, we should be allowed to file a counterclaim and it should not be barred by res judicata. We would respectfully ask that the dismissal under 2619 within the context of the foreclosure action be reversed and that the counterclaim proceed in the trial court. Thank you, counsel. Mr. Chamley, you may proceed, sir. May it please the court and counsel. Your Honor, again, my name is Joe Chamley. I represent the B.C. Bank and it is our position that all of these judgments issued by the trial court should be affirmed. Our first position is the issue of does this court have jurisdiction, as I raised in our respective briefs. As to the L case, that is the confession of judgment, but it is our position, of course, that the notice of appeal was untimely under 303A as it was filed beyond the 30 days after entry of the final judgment order. The procedural history indicates that, of course, the defendants exercised their rights under Rule 276 to file a motion to vacate the confession of judgment. And those motions were subsequently denied procedurally early on in the trial court in fall of 2008 and the early spring of 2009. And eventually then in the spring of 2009, the case was closed. On February 26, 2009, the court entered a docket that says this case is closed after all the various motions to vacate had been denied by the trial court. The only actions still pending then in the trial court, of course, were supplementary actions to enforce the judgment, to collect on the judgment. We believe, again, that the notice of appeal was untimely in the L case and that the subsequent defendants filing of another motion to vacate in the L case filed on December 11, 2009, is a prohibited successive post-judgment motion. And that is not permitted. Even under 2.1401, it's not permitted. The trial court found it was not permitted. The trial court also found that defendants had not even met any of the elements of 2.1401 even if it had not been a successive post-judgment motion. And the court denied that subsequent motion to vacate. The purposes, the reasons the court found that that subsequent motion to vacate was not well taken was the stated basis of that particular motion were very brief and perfunctory, if not too brief, too perfunctory, just simply statements indicating that defendants' judgment was entered on 11-19-08 was rendered without notice to the defendants, thereby eliminating the opportunity to be heard on any defense or objections, and the judgment of 11-19-08 was based upon an illegal note. That was the sum total of defendants' argument in support of their 2.1401 and it simply was insufficient and the court denied that motion. Turning to the foreclosure or CH case, our first position, of course, is that that notice of appeal was also untimely. And this has to do with the issue of the defendants in their brief argue that the counterclaim filed in the CH case should not have been dismissed pursuant to res judicata. And we cite cases that say, well, the problem with that is, just on the jurisdictional grounds, is that when the trial court, Judge Hill, entered her ruling on November 20-09 that dismissed the counterclaim, that became a final judgment as to that particular matter, as to the counterclaim, and the defendants had an obligation to appeal on a timely basis. They did not appeal that particular order on a timely basis. Over 30 days commenced, over 30 days went by before they filed their notice of appeal where they're seeking to reverse Judge Hill's ruling on the order dismissing the counterclaim. Instead, defendants filed their notice of appeal after the judgment of foreclosure was entered and that simply was untimely. The only cases you cite in support of this claim are decisions which go back before the judicial article of 1964 and then the Constitution of 1970, which changed all of this and provided the Supreme Court, which shall now be in charge of deciding rules of appeal. Do those cases have any validity? We believe they do, Your Honor. Aren't they based on a statutory scheme? What part of the Supreme Court rules supports your claim? Well, we believe that Supreme Court Rule 303 addresses the issue. As to the timeliness, we believe that... What Supreme Court rule says that a counterclaim has to be appealed within 30 days if it's been thrown out? Your Honor, I'm not certain I can cite a direct Supreme Court rule. Would that be because there isn't one? That certainly may be, Your Honor. Well, you had a chance to cite it to us in preparing the brief. I'm assuming you looked carefully, Counsel. Yes, we did, Your Honor. Yes, we did, Your Honor. And it's our position that this issue is decided in case law. Well, yes, but the case law is from a time when statutes decided these issues, not Supreme Court rules. We understand that, Your Honor, and it's our position that this concept has continued. Only the Supreme Court forgot to mention it. I mean, clearly there's nothing in the rules now that so state, is there? Not that I'm aware of. In the direct rules, not that I'm aware of. Now, also going to the issue of Supreme Court Rule 303 as to the sufficiency of the notice of appeal, there is a specific Supreme Court rule on this particular issue, and that is that although the appellate court should have a certain liberality in reviewing trial courts to a certain extent, it's not simply unlimited. There's no surprise to you here. You know what was being appealed. We can figure it out, too. It's not exactly a model for procedure classes at Illinois law schools, what the notice of appeal says, but why should we deprive them of their appeal on the technical assessment of the notice of appeal deficiencies? Well, quite frankly, I guess we don't interpret this as a technical, maybe it is technical in that it is enforcing the rules and the Supreme Court rules and particular case law, but we believe this court's jurisdiction is not something to be taken lightly. We believe that enforcement of the rules is proper and appropriate. And so that the substance of their notice of appeal referring to the March 26, 2010 order, which only dealt with the judgment of foreclosure, that should have been the subject of this appeal, but simply was not. So with that, then we go to the issue of res judicata, and it's our position that the trial court got it right when the trial court, in the written opinion of November 20, 2009, laid out the various reasons why the prior judgment on the note barred the subsequent counterclaims on the note regarding the interest calculation issue. We believe that the test for res judicata, as enumerated by the Illinois Supreme Court and stated by this court, is the, it's not the same evidence test, it's the transactional test, which we believe dovetails perfectly with exactly what the situation is. That a note was, a judgment was entered on a note in the confession of judgment, and issues relating to the note, most importantly, one of the most important issues is the issue of interest, are barred by res judicata. So, if I have failed to raise a particular in my comments before the court, in my, that I do state in my brief, I repeat, reaffirm the information and arguments that we've made in our brief. Unless there are any other questions for me, again, I... I see none. Thank you, Counsel. Thank you, Your Honor. Mr. Berry, any rebuttal, sir? Thank you. I, I think the argument we've made in the brief, I think the notice of appeal in both cases was timely, fully within the 30 days, but I guess the one, as I, as I try to boil this down, we're primarily wanting the reversal of the dismissal of the counterclaim in the CH case. The court ruled that that counterclaim was dismissed based upon res judicata. I still have not seen anything from UC Bank which states in any way that the L case was a final and appealable order with the concept of the reservation of rights for the attorney fees. And until that, it is non-final and non-appealable. That, that is the rule. There's even, as I cited in my, my brief, even awarding attorney fees without specifying the amount did not constitute a final judgment. In every foreclosure action, every suit on a note, the only time I've seen anything that would even possibly be an argument in favor of UC Bank on this issue would be, say, for example, in a, in an estate proceeding, the award of attorney fees, that issue can be appealable under certain circumstances without reservation of the entire estate. But nothing, when you, when you sue on a note, foreclose on a mortgage, and you reserve the issue of attorney fees, that is not a final and appealable order. For res judicata, you have to have it. UC Bank does not. Whether or not the issue's resolving, the attorney fee issue will in any way be attacked is not cause for speculation. The fact that it's not a final and appealable order does not allow the trial court to dismiss the counterclaim under 2619 based upon res judicata. If there are no questions, I approve that result. Okay, thank you, counsel. We'll take this matter into advisement. We'll be in recess until tomorrow.